IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re SHERRYL MADISON,<br><br>Debtor. | Chapter 7<br><br>Case No. 2:09-bk-22225-SSC<br><br>Adv. No. 2:09-ap-01535-SSC<br><br>(Not for Publication- Electronic Docketing ONLY) |

I. PRELIMINARY STATEMENT

On January 6, 2011, this Court conducted a hearing on the request of Sherryl Madison, the debtor in this case, to determine whether her counsel should be reported to the State Bar of Arizona for unethical conduct.[1] The hearing arose out of the issuance of an Order to Show Cause by the Court for Mr. Clark's failure to represent Ms. Madison at various hearings before this Court or in his failure to file and serve pleadings on her behalf. The Order to Show

---

**1.** Initially Ms. Madison appeared before the Court on November 2, 2010, on her Motion to Vacate this Court's order of March 25, 2010, dismissing Adversary Proceeding No. 2:-09-ap-01535 SSC as to all of the Defendants (the "Adversary"). The parties present at that hearing are as noted in the record. The Court asked Ms. Madison if she wished a continuance of the hearing on her Motion to Vacate. Since Ms. Madison had drafted the Motion, she requested that she be allowed to proceed. The Court denied her Motion to Vacate, and the Adversary remains dismissed. *See* Docket Entry No. 41 in the Adversary. However, given Ms. Madison's statements on the record as to Mr. Clarke's failure to represent her effectively as her counsel, the Court issued a separate Order to Show Cause requiring the appearance of Mr. Clark at the hearing on January 6, 2011.

1

Cause is in the record.[2] The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1134 and 157 (West 2010). Pursuant to Bankruptcy Rule 7052, the Court has set forth below its findings of fact and conclusions of law.

## II. FACTUAL FINDINGS

On November 20, 2009, Mr. Richard E. Clark filed a complaint on behalf of Ms. Madison, as Plaintiff, against numerous defendants, including Mortgage Electronic Registration Systems, Inc.; Wells Fargo Bank, N.A., as Trustee under a certain Pooling and Servicing Agreement; Fremont Investment & Loan Company, now known as Fremont Reorganization Corporation; HomEq Servicing Corporation, a d/b/a of Barclays Capital Real Estate, Inc.; Ticor Title Co.;and Michael A. Bosco, Jr.

At a separate hearing in the administrative case, the Court vacated the automatic stay as to Wells Fargo.[3] The Court set forth its decision concerning the vacatur of the stay on the record at the hearing on December 15, 2009. Mr. Clark was present at that hearing as counsel for Ms. Madison.

Thereafter the Defendants filed various motions to dismiss the underlying complaint on December 23, 2009, and January 11, 2010.[4] Mr. Clark filed and served a response as to the first motion to dismiss on January 11, 2010. However, Mr. Clark did not file a response as to the second motion to dismiss. Mr. Clark failed to appear at subsequent hearings in the adversary proceeding, held on February 18, 2010, and March 18, 2010. Ms. Madison states that Mr. Clark did not advise her of the filings of the motions to dismiss, nor of the various hearing dates.

---

**2.** Docket Entry No. 41 in the Adversary.

**3.** Docket Entry No. 118 in the administrative case.

**4.** Docket Entry Nos. 6 and 10 in the Adversary.

2

At the January 6, 2011 hearing, Mr. Clark called Mark Murphy. He testified that prior to May 2010, he was a member and one of two principals of AOM Group. Although he stated that Ms. Madison was working at AOM Group from October 2009 to January 2010, he did not have any documentation to support that she was an independent contractor of AOM Group at the time. Whatever her status, it is clear that Ms. Madison was working at AOM Group, in some capacity, during the relevant time period. Mr. Murphy, in contravention of his Affidavit, could not remember the specifics of how Mr. Clark was hired as general counsel of AOM Group. For instance, he could not recall, on cross examination, who was present at the meeting to hire Mr. Clark. On other issues, Mr. Murphy was equally vague. He was unclear as to the specifics of the adversary proceeding Mr. Clark commenced on behalf of Ms. Madison in the Bankruptcy Court, and he was unclear or uncertain as to when and why Mr. Clark withdrew from his representation of Ms. Madison in the various adversary proceedings that were pending in a number of courts.[5]

Mr. Murphy was clear that Mr. Clark had been hired as general counsel for AOM Group at some point in October 2009, and that Mr. Clark had agreed to represent the various individuals at AOM Group, including Ms. Madison, in litigation that they wished to pursue. In January 2010, Mr. Clark's workload dramatically increased, so he was no longer able to represent Ms. Madison or any of the other individuals at AOM Group. Mr. Murphy conceded that he had only learned from Mr. Clark the specifics as to Mr. Clark's withdrawal as counsel for Ms. Madison in the various actions or proceedings commenced by her and Mr. Clark in state and federal courts.

Mr. Clark testified at the January 6, 2011 hearing. He stated that on October 20, 2009, four people interviewed him for the general counsel position at AOM Group and that he was hired that day. Ms. Madison was one of the people who interviewed him. On October 28,

---

**5.** Given Mr. Murphy's vague recall of what had transpired, it is apparent that Mr. Clark probably had a substantial role in drafting Mr. Murphy's Affidavit. *See* Docket Entry no. 45 in the Adversary.

3

2009, Mr. Clark began working for AOM Group. In November 2009, Ms. Madison requested Mr. Clark assist her as her legal counsel, indicating that said representation was one of his duties as general counsel to AOM Group. All individuals at AOM Group consented to his representation of Ms. Madison. He filed the complaint in the Bankruptcy Court, on her behalf, which was designated Adversary No. 2:09-ap-01535. He stated that Ms. Madison checked the electronic system at the Bankruptcy Court "every day" to determine what had been filed in the Adversary. By January 2010, he testified that he could no longer represent her because of his increased workload and that she had a low probability of success as the Plaintiff in the Adversary. He testified that as of January 15, 2010, he told her that she must represent herself, but inexplicably that he would remain "of record" as her counsel, allowing her three months to retain new counsel to represent her. When he had not heard from her as to new counsel, he filed a motion to withdraw as her counsel of record on April 12, 2010.[6] Mr. Clark has no documentation to support this testimony. As the docket reflects, he did not file a motion to withdraw until April 2010.

Mr. Clark left the employ of AOM as of June 1, 2010, and did not retain any documentation concerning his representation of Ms. Madison. Concerning the other cases in other courts as to which Ms. Madison stated he was ineffective,[7] he testified that all of the hearings or requirements to file pleadings occurred after June 1, 2010, when he had left AOM. In reviewing the orders or decisions by other courts in other matters, the Honorable G. Murray Snow, referred to Mr. Clark in the Order dated July 20, 2010, and Mr. Clark was listed as

---

**6.** Docket Entry No. 27 in the Adversary. Mr. Clark also failed to lodge the appropriate order with the Court.

**7.** The pleading filed by Ms. Madison in the Adversary on January 6, 2011, contains orders from various actions in the Arizona Federal District Court and Superior Court where Ms. Madison asserts that Mr. Clark was ineffective. Curiously the actions refer to AOM as the plaintiff, not Ms. Madison. *See* Docket Entry No. 44 in the Adversary.

4

1  counsel of record in the complaint commenced by AOM Group against numerous defendants.[8]
2  However, Judge Snow stated that there was at least some basis for the filing of the lis pendens by
3  Mr. Clark and Mr. Sagarnaga for AOM and denied the request of one of the defendants for
4  sanctions. Judge Snow did indicate that the AOM action would be dismissed for a failure to
5  prosecute.[9]

In the minute entry from the Arizona Superior Court, the judge stated that as of December 2, 2010, Mr. Clark apparently no longer represented AOM, but had not filed a motion to withdraw in the matter, and was not present, according to the record, at the hearing. The Superior Court did state in the minute entry that it was concerned that "Mr. Clark [was] not meeting his responsibilities either to the Court or to his client [and would] refer [the] matter to the State Bar for investigation and possible disciplinary action."[10]

On cross examination, Mr. Clark provided no reason for his behavior. Stating that he was not familiar with the procedures for a motion to withdraw in the Bankruptcy Court did not help his case. He also reiterated that Ms. Madison agreed to proceed on her own. However, that does not absolve Mr. Clark of his independent responsibilities to Ms. Madison and this Court. In fact, the minute entry in the Superior Court is almost identical to this Court's experience with Mr. Clark. He remained of record in the State Court, but did not file pleadings or assist his client at hearings. Even if he had a conversation with Ms. Madison on January 15, 2010, at which she agreed to "go it alone," there is no reason why he should not have advised this Court of such an agreement. He could have filed a motion to withdraw, requested a hearing, and at the hearing requested that this Court provide Ms. Madison with one month, two months, or some other time period, for her to retain new counsel. He chose inaction instead.

---

**8.** Id. The complaint was filed in the Arizona District Court and was assigned CV-10-208-PHX-GMS.

**9.** Id.

**10.** Id.

5

Sheila Pilat testified on behalf of Ms. Madison and confirmed that although it was anticipated that Ms. Madison would become a member of AOM or become an independent contractor for AOM, neither event transpired. Ms. Pilat, however, was unclear as to why Ms. Madison was located at the AOM premises from October 2009 into at least January 2010. Ms. Pilat did agree that Mr. Clark, as general counsel, was to represent the various individuals at AOM. Everyone did agree that it was acceptable for Mr. Clark to represent Ms. Madison. Ms. Pilat did state emphatically that there was no meeting in January with Ms. Madison concerning Mr. Clark's withdrawal as Ms. Madison's counsel. Ms. Pilat also stated that Ms. Madison did not check the electronic docket "every day." Ms. Pilat did confirm that Ms. Madison had attempted to reach Mr. Clark on a number of occasions, but that Mr. Clark would not return her telephone calls. Ms. Pilat testified that Mr. Clark did meet with Ms. Madison in April 2010, and Ms. Madison requested that he withdraw.[11]

Ms. Madison testified before the Court on January 6, 2011. She stated that she "did not regularly check the docket." But to be clear, in reviewing the pleading filed by Ms. Madison with this Court in January 2011, she attached the Arizona Federal District Court docket, which reflects, at the bottom, that she has her own PACER number. Thus, Ms. Madison certainly has a certain sophistication beyond that of most individuals acting pro se, or without the assistance of counsel. Moreover, Ms. Madison testified that she did not learn of Mr. Clark's

---

**11.** Ms. Pilat was also sure that Ms. Madison had never received notice of any pleadings filed in this Adversary and that Ms. Madison had not received notice of any hearings in February or March 2010 in this Adversary. But how would she know? Ms. Pilat testified that Ms. Madison was not "on the roster." It is unclear what she meant, and in any event, the Clerk of the Court utilizes the Bankruptcy Noticing Center in Washington, DC, to provide notice to interested parties in an adversary proceeding. The Center's noticing of Ms. Madison is set forth in a number of affidavits that have been filed in the adversary proceeding itself. Moreover, the Defendants filed separate pleadings with the Court that reflect that they were providing notice to Ms. Madison separately from Mr. Clark. For instance, Fremont's response to Ms. Madison's Motion to Vacate the Order Dismissing her Adversary Proceeding states that a copy of the pleading was separately sent to Ms. Madison at the address she provided to the Bankruptcy Court. *See* Docket Entry No. 33, at 3, Lines 14-16. At that time, Mr. Clark was still listed as counsel for Ms. Madison on this Court's docket.

6

withdrawal as her counsel until April 2010 when she contacted him to discover what was happening in this Adversary Proceeding, but she was not credible when she testified that she never received notice of what was transpiring in this Adversary. Thus, Mr. Clark failed to keep Ms. Madison apprised of what was transpiring in this Adversary, but she apparently was obtaining that information separately from Defendants' counsel or on her own. Based on this record, this Court finds that it was Mr. Clark's responsibility to inform Ms. Madison that he could no longer represent her and to follow the procedures necessary to withdraw as her counsel. He did not do that, and he left her to fend for herself. Mr. Clark did not fulfill his ethical responsibilities to Ms. Madison and this Court.

### III. LEGAL ANALYSIS

It is clear from the evidence that Mr. Clark failed in his duty to his client and failed to comply with a number of ethical rules in the process, including, ER 1.3, ER 1.4(a)(2) - (4), and ER 1.16 (c). Mr. Clark had a duty to act with reasonable diligence in his representation of Ms. Madison, to communicate adequately with her and the Court, and to take the necessary steps to withdraw appropriately from representation. He failed in his ethical responsibilities.

**ER 1.3. Diligence** states:

A lawyer shall act with reasonable diligence and promptness in representing a client. The Court is of the opinion that Mr. Clark did not meet the professional standard to comply with ER 1.3. Diligence requires the exercise of caution and care in the handling of legal matters. Matter of Wolfram, 174 Ariz. 49, 847 P.2d 94 (1993). Comment 2 of the Rule provides that a lawyer's workload must be controlled so that each matter can be handled competently. Mr. Clark testified that he could no longer represent Ms. Madison because he experienced an increased workload. An increased workload helps a Court understand why he lacked diligence, but it does not excuse the conduct. Id. Moreover, a lawyer must carry through to conclusion all

7

matters undertaken for a client until the relationship is terminated. The record indicates that Mr. Clark failed to respond or appear on behalf of his client in this Court, as well as in other proceedings. He did not file a response to the second motion to dismiss filed in the Adversary, and failed to appear at subsequent hearings in the adversary proceeding, held on February 18, 2010, and March 18, 2010. Ms. Madison also testified that Mr. Clark did not advise her of the filings of the motions to dismiss, nor of the various hearing dates. The testimony also reflects that Ms. Madison's attempts to contact him went nowhere, as Mr. Clark did not return telephone calls.

**ER 1.4. Communication** provides in part:

(a) A lawyer shall:
. . . .
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter; [and]
(4) promptly comply with reasonable requests for information. . .

The Court also concludes that Mr. Clark failed to communicate adequately with his client, in violation of ER 1.4. Comment 1 of the Rule states that reasonable communication between the lawyer and client is necessary for the client to participate effectively in the representation. Here, the record reflects that Ms. Madison is much more adept at navigating through the legal system than most individuals acting pro se. She has her own PACER account and was able to keep abreast of her case on her own. However, this did not relieve Mr. Clark of his independent responsibility to keep Ms. Madison reasonably informed of the status of her case. Therefore, the Court finds that Mr. Clark's failure to advise his client of important matters, such as the motions to dismiss, and the hearings that were scheduled thereon, as noted above, violated ER 1.4. <u>See</u> <u>In re Cardenas</u>, 164 Ariz. at 151, 791 P.2d at 1034 (finding the failure to notify clients of important matters and explain them to ensure informed decision-making violated ER 1.4).

**ER 1.16. Declining or Terminating Representation** states in part:

(c) A lawyer shall comply with applicable law requiring notice to or permission

8

> of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

The Court also finds that Mr. Clark's failure to advise the Court of his intent to withdraw from representing Ms. Madison and his failure to take the necessary steps to effectuate the withdrawal violate ER 1.16, as well as Local Bankruptcy Rule 9010.[12] Mr. Clark testified that he and Ms. Madison discussed his withdrawal in January 2010, but he did not file any pleadings with the Court until April 2010. Moreover, he did not lodge a proposed order as required by the Local Bankruptcy Rule, which did not come to the Court's attention until the Court set a hearing on Ms. Madison's Motion to Vacate the Court's order of March 25, 2010. The Court set a hearing on Ms. Madison's Motion to Vacate and directed Mr. Clark to appear.[13] Mr. Clark indicated he

---

**12.** Local Bankruptcy Rule 9010-1 provides in part:

(a) Attorney of Record. An attorney who has appeared on behalf of a party in a case or proceeding becomes the attorney of record for the party in that case or proceeding. An attorney of record shall remain such until the time for appeal of any judgment has expired or any such judgment has become final, the case has been closed or dismissed, or the court has entered a formal order of withdrawal or substitution in the case.

(b) Withdrawal and Substitution. No attorney shall seek withdrawal or substitution as attorney of record in any pending case or proceeding except by written application. Unless the Rules require otherwise, the application shall contain at a minimum: (1) the name, address and telephone number of the substituting attorney, and such attorney's approval; or (2) if no substituting attorney exists, the client's name, last known address and telephone number, and a certificate of the attorney that the client has been notified in writing of the status of the case, including the dates and time of any court hearings or trial settings and the need to comply with any existing court orders, discovery requests and the possibility of sanctions for the failure to comply. The application shall be presented to the court, may be considered without a hearing, and shall be accompanied by a proposed order containing the name, address and telephone number of the person to whom subsequent pleadings shall be sent.

(c) Notice. Prompt notice of any withdrawal or substitution order shall be given to all interested parties in any case, adversary proceeding, or contested matter in which the withdrawing attorney has appeared.

**13.** Docket Entry No. 34 in the Adversary.

9

was not familiar with the procedures for a motion to withdraw in the Bankruptcy Court. However, a quick review of Local Rule 9010-1 provides more than enough guidance to a lawyer unfamiliar with the Bankruptcy Court's procedures. Moreover, Mr. Clark could have easily filed his motion to withdraw and requested a hearing. Instead, he simply filed the motion to withdraw, did nothing else, and let his client proceed on her own.

## IV. CONCLUSION

This Court, based upon the record before it, finds that Mr. Clark did not fulfill his responsibility to represent Ms. Madison and did not fulfill his responsibility as an officer of this Court. The Court concludes that he has violated ER 1.3, ER 1.4(a)(2) - (4), and ER 1.16 (c). This matter is referred to the Arizona State Bar for further action.

DATED this 30th day of March, 2011.

*[signature]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

10